**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROSA FERNANDEZ, | : |
| | : |
| Plaintiff, | : Civil Action No. 20-31 (FLW) |
| | : |
| v. | : |
| | :  **OPINION** |
| PRIMELENDING, JANINE BECKER, and JOHN DOES, 1-10, | : |
| | : |
| Defendants. | : |
| | : |

**WOLFSON, Chief Judge:**

In this discrimination suit, plaintiff Rosa Fernandez ("Plaintiff") alleges that her former employer, defendants PrimeLending and Janine Becker, a manager at PrimeLending (collectively, "Defendants"), discriminated and retaliated against Plaintiff, wrongfully terminated her employment and created or maintained a hostile work environment in violation of the New Jersey Law Against Discrimination ("NJLAD"). Plaintiff also brings contract related claims. In lieu of filing an answer, Defendants filed a motion to compel arbitration and dismiss this action, arguing that an enforceable arbitration agreement exists between the parties, and that the claims asserted in Plaintiff's Complaint fall within the scope of that agreement. For the reasons set forth below, Defendants' motion to compel arbitration is **GRANTED**, and Plaintiff's Complaint is dismissed.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

From April 2015 to September 2018, Plaintiff was employed as a loan processor by PrimeLending, a mortgage lending company. Compl. ¶ 4. During the her employment, Plaintiff completed the "PrimeLending Policies Course." ECF No. 4-2, Certification of Janine Becker

1

("Becker Cert")., ¶ 3. The Policies Course included, among other things, a notice regarding Prime Lending's Dispute Resolution and Arbitration Agreement ("Arbitration Agreement" or the "Agreement"), and a link to review the agreement. *See* Becker Cert., Ex. B, Prime Lending Policies Course Content. As part of the course, Plaintiff was required to acknowledge that she had received and read, or had the opportunity to read, the Agreement, which provides, *inter alia*, that "Covered Disputes" must be resolved in arbitration rather than by a judge or jury in a court of law. Becker Cert., ¶ 4. Covered Disputes include:

> "(b) claims related to, or arising out of, the employment relationship between you and the company, including the termination of that relationship by you or the company, (c) an allegation that any adverse employment action was based on discrimination or harassment because of […] FMLA leave or any other legally protected status arising under any federal, state or municipal statute or regulation (such as, for example, […], the New Jersey Law Against Discrimination)"

Becker Cert., Ex. A, Prime Lending Dispute and Arbitration Agreement ¶ 2, "*Types of Disputes.*" The Agreement further provides in bold and capitalized typeface that,

> **THIS CONTRACT IS A BINDING ARBITRATION AGREEMENT WHICH MAY ENFORCED BETWEEN THE PARTIES.**
> **BY ACCEPTING ELECTRONICALLY, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND READ, OR HAVE HAD THE OPPORTUNITY TO READ THIS DISPUTE RESOLUTION AND ARBITRATION AGREEMENT. YOU UNDERSTAND THAT THIS DISPUTE RESOLUTION AND ARBITRATION AGREEMENT REQUIRES THAT DISPUTES THAT INVOLVE THE MATTERS SUBJECT TO THE ARGEEMENT BE SUBMITTED TO ARBITRATION PURSUANT TO THE DISPUTE RESOLUTION AND ARBITRATION AGREEMENT RATHER THAN TO A JUDGE AND JURY IN COURT**

Becker Cert., Exhibit A, ¶13. According to Becker, Prime Lending's "Human Resources Business Partner" and Assistant Vice President, each employee is given a unique username and password, which the employee must enter to verify that he or she has completed the Prime Lending Policies Course, and that Plaintiff could not have successfully completed the Prime Lending Policies Course without acknowledging the Agreement. Becker Cert., ¶¶ 6-7. The specific portion of the

2

PrimeLending Policies Course regarding the Agreement provides, "Click here to review: dispute resolution & Arbitration Agreement" and requires the employee to check a box affirming,

> I acknowledge that I have received and read or have had the opportunity to read this dispute resolution and arbitration agreement. I understand that the dispute resolution and arbitration agreement requires that disputes that involve the matters subject to the agreement be submitted to arbitration pursuant to the Dispute Resolution and Arbitration Agreement rather than to a judge and jury in court.

Becker Cert., Ex B., Agreement Slide Layer.

On this motion, however, Plaintiff argues that, although she acknowledged receipt of the Agreement, she did not sign or agree to be bound by it. Fernandez Cert., ¶ 2. Plaintiff explains that the Agreement was mailed to her along with various other documents including the Prime Lending Employee Handbook, Insider Trading Information, and Code of Ethics, and that she was "instructed and required by PrimeLending to acknowledge all the emailed documents. [She] understood that if [she] did not acknowledge each document that [she] would be fired." Fernandez Cert., ¶¶ 2-3. Plaintiff further argues that, although the policies course included "a screen for alternative dispute resolution that asked [her] to acknowledge [her] receipt and review of the policy," she purportedly "never received a request to consent and be bound by the alternative dispute resolution clause" and she "never agreed to be bound by an arbitration waiver clause." Fernandez Cert., ¶¶ 6-7. Plaintiff purportedly does not recall "receiving yearly emails concerning the dispute resolution policy" and contends that she "never signed an agreement to waive [her] right to a jury trial and be bound by binding arbitration regarding violations of the New Jersey Law Against Discrimination or any other claim." Fernandez Cert., ¶¶ 9-10.

In 2017, Plaintiff notified Defendants that she was pregnant and submitted a request for maternity leave, which was approved. Compl. ¶¶ 7-9. During Plaintiff's leave, Plaintiff's

3

physician prescribed additional recovery time due to complications stemming from Plaintiff's pregnancy, which was also approved. Compl. ¶¶ 10-11. After Plaintiff returned to work, however, Plaintiff was allegedly informed that she was being laid off. Compl. ¶¶ 13-14.

In October 2019, Plaintiff filed suit in New Jersey state court asserting violations of the NJLAD, which prohibits employment discrimination on the basis of disability and pregnancy, and breach of an implied contract. Compl, Counts I-IV. Thereafter, Defendants removed the case to this court and filed the instant motion. While this motion was pending, the New Jersey Supreme Court heard oral argument in *Skuse v. Pfizer, Inc.,* 202 A.3d 1, 3 (N.J. App. Div. 2019), *certif. granted*, A.3d 245 (June 3, 2019), which – like the present case – involves the question of whether an employee assented to an arbitration provision where the employee merely acknowledged the arbitration agreement by checking a box during an online training module. Accordingly, this Court stayed resolution of this motion pending the New Jersey Supreme Court's opinion in *Skuse*, which was issued on August 18, 2020. Thereafter, the parties submitted supplemental briefing addressing the impact of the *Skuse* decision. *See* ECF No. 12, Pl. Supplemental Brief; ECF No. 13., Def. Supplemental Br.

## II.  STANDARD OF REVIEW

In 1925 Congress enacted The Federal Arbitration Agreement ("FAA"), which created "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate…." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Congress designed the FAA "'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Beery v. Quest Diagnostics, Inc.*, 953 F.

Supp. 2d 531, 536-37 (D.N.J. 2013) (quoting *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). As such, the FAA provides that contracts containing arbitration clauses shall be binding, allows for the stay of federal court proceedings in any matter subject to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. *See* 9 U.S.C. §§ 2-4. Together, "those provisions [of the FAA] 'manifest a liberal policy favoring [the enforcement] of arbitration agreements.'" *Beery*, 953 F. Supp. 2d at 537 (quoting *Gilmer*, 500 U.S. at 24). To that end, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id*. (quoting *Mercury Constr. Corp.*, 460 U.S. at 24-25).

Although federal law presumptively favors the enforcement of arbitration agreements, a district court must affirmatively answer the following questions when presented with a motion to compel arbitration pursuant to Section 4 of the FAA: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). Federal courts apply applicable state contract law in evaluating whether a valid arbitration agreement exists. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). When "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is 'unenforceable based on a generally applicable contractual defense, such as unconscionability.'" *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

### III.     ANALYSIS

The parties do not dispute that the claims at issue fall within the scope of the Arbitration Agreement. Indeed, the plain language of the Agreement's "*Types of Disputes*" provision makes

5

clear that Plaintiff agreed to resolve all potential claims arising from her employment relationship with Defendants in arbitration.  *See* Ex. A, "PrimeLending Dispute Resolution and Arbitration Agreement."  Plaintiff alleges that she was subject to a discriminatory and hostile work environment while employed at Prime Lending, and wrongfully terminated in violation of both NJLAD and an implied contract created by defendant's employee handbook which prohibited Defendants from violating NJLAD or acting in a discriminatory manner.  *See generally* Compl. Thus, her claims are plainly "related to, or arising out of, the employment relationship between [Plaintiff]" and PrimeLending, and they involve an "adverse employment action [. . .] based on discrimination or harassment because of […] FMLA leave or any other legally protected status arising under any federal, state or municipal statute or regulation (such as, for example, […], the New Jersey Law Against Discrimination.)" *Id*. ¶ 2.  Because each of Plaintiff's claims appears to be explicitly covered by the Agreement, and there is no dispute on this issue, I am satisfied that Plaintiff's claims fall within the scope of the Agreement.

Rather, Plaintiff opposes Defendants' motion to compel arbitration on two bases.  First, Plaintiff contends that she did not sign the arbitration agreement, therefore it is not enforceable against her.  Plaintiff's Brief in Opposition ("Pl. Opp.") at 2.  Second, Plaintiff argues that, even if a valid agreement existed, the Agreement should not be enforced because it is unconscionable.  *Id*.

### A. The Parties Agreed to Arbitrate Their Claims

Defendants argue that Plaintiff agreed to arbitrate all "Covered Disputes," as defined by the Agreement, during the training module when she acknowledged that she had read the Agreement. Def. Br. at 3.  Moreover, Defendants contend that the requisite intent to be bound is evident in Plaintiff's completion of the training module, where she indicated that she both read the document and understood its terms.  *Id*.  Specifically, while completing the module, Plaintiff

indicated that she "received and read or have had the opportunity to read the dispute resolution and arbitration agreement," and that she "understand[s] that this Dispute Resolution and Arbitration Agreement requires that disputes that involve the matters subject to the agreement be submitted to arbitration pursuant to the Dispute Resolution and Arbitration Agreement rather than to a judge and jury in court."  Becker Cert., Ex. B, "Dispute Resolution & Arbitration Agreement (Slide Layer)"

On the other hand, Plaintiff insists that the Agreement should not be enforced, because she did not agree to be bound by its terms; instead, she merely acknowledged that she received and read the document.  Pl. Opp. at 4-5.  Specifically, Plaintiff contends that the acknowledgment slide of the policies course merely "state[d] the definition [of arbitration] and asked [P]laintiff to acknowledge that she read it," which is inconsistent with New Jersey precedent governing the validity of arbitration provisions.  *Id*. at 5.  In support of this contention, Plaintiff, relying on *Leodori v. Cigna Corp.*, 814 A.2d 1098 (N.J. 2003), argues that an arbitration agreement is unenforceable where an employer fails to secure an employee's signature as indication of the employee's assent to be bound by the arbitration agreement.  *Id*. Further, in her supplemental submission, Plaintiff unpersuasively attempts to distinguish this matter from *Skuse*, arguing that the Agreement was "bundled together with multiple documents such as the Employee Handbook, Code of Conduct, Prime Lending Addendum and Insider Trading. The addendum included information about the customer credit card policy. The Arbitration Agreement was not separately delineated in the main heading choices."  Pl. Supplemental Br. at 2.  Moreover, Plaintiff asserts that the "acknowledgement form . . . resembles the form held unenforceable in *Leodori*."  *Id*.

Under New Jersey law, an agreement to arbitrate, like any other contract, "must be the product of mutual assent, as determined under customary principles of contract law."  *James v.*

7

*Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Under New Jersey law, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Crawford v. Compass Grp. USA*, No. 14-2545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015). To manifest assent, "an offeree must provide 'unqualified. acceptance,' which can be express or implied by conduct." *James*, 852 F.3d at 265.

The New Jersey Supreme Court's opinion in *Skuse* definitively forecloses Plaintiff's argument that she did not assent to the Agreement. In *Skuse*, Pfizer distributed its arbitration agreement to employees via email, and required them to acknowledge the agreement as part of a "training module" program. *Skuse v. Pfizer, Inc.*, No. 082509, 2020 WL 4760077, at *8 (N.J. Aug. 18, 2020). The training module consisted of four slides, one of which instructed the employee to click the link to read the agreement, and the third slide stated

> I understand that I must agree to the Mutual Arbitration and Class Waiver Agreement as a condition of my employment. Even if I do not click here, if I begin or continue working for the Company sixty (60) days after receipt of this Agreement, even without acknowledging this Agreement, this Agreement will be effective, and I will be deemed to have consented to, ratified and accepted this Agreement through my acceptance of and/or continued employment with the Company.

*Id*. at 10. The language at the bottom of the third slide stated "CLICK HERE to acknowledge." *Id*. There, the plaintiff argued, like here, that her employer's method of delivery, the training module, and the use of the word "acknowledge," rather than "agree" next to the click box precluded a finding of assent and were insufficient to bind her to the arbitration agreement. *Id*. at *9. On appeal, the New Jersey Supreme Court rejected both arguments. *Id*. at *13, *17. The Court explained that while "Pfizer's characterization of its slides summarizing the Agreement as 'training' was a misnomer," the "use of the term 'training' in [Pfizer's] communications does not

8

invalidate the agreement." *Id*. at 13.  The Court noted that Pfizer plainly informed employees that they needed to accept the arbitration policy, thus "[a]ny contention by Skuse that she completed Pfizer's e-mailed module without reading its contents or the documents linked to it would have no impact on the analysis." *Id*. at 13.  The Court also found that the use of the word "acknowledge" did not preclude a finding of assent, because the context of the slide made clear that the plaintiff was acknowledging her acceptance of the agreement's terms. *Id*. at *17.  The Court further elaborated that "[i]t is evident from the language of that page that the 'CLICK HERE to acknowledge' button directly relates to Pfizer's arbitration policy, as set forth in that [a]greement . . . . What Skuse was asked to 'acknowledge' -- what she did 'acknowledge' -- was her understanding that she 'must agree' to the [a]greement." *Id*. at *17.  Similarly, here, Plaintiff was provided with the Agreement, both prior to and during her employment with Defendant.  Further, the "agreement slide layer" of the online policies course is clearly labeled, "Dispute Resolution & Arbitration Agreement," and it provides a link to the text of the agreement.  Becker Cert., Ex B., Agreement Slide Layer.  Like in *Skuse*, the use of the term "acknowledge," rather than "agree" on the slide layer, evidences Plaintiff's assent to the Agreement, as the checkbox clearly indicates that it is referring to the arbitration agreement: "I acknowledge that I have received and read or had the opportunity to read this dispute resolution and arbitration agreement. I understand that disputes that involve the matters subject to the agreement be submitted to arbitration pursuant to the Dispute resolution and Arbitration Agreement rather than to a judge and jury in court." *Id*.

Further, Plaintiff's reliance on *Leodori* is misplaced.  There, the plaintiff's employer distributed a handbook, containing an arbitration agreement to all of its employees, including the plaintiff.  814 A.2d at 1101.  The handbook was accompanied by an "acknowledgment form," which required the employee to acknowledge that he or she received the handbook and understood

9

the policies contained therein. *Id*. However, the acknowledgment form did not contain any language specifically referring to the arbitration agreement and did not expressly require the plaintiff to agree to the arbitration agreement. *Id*. Rather, a separate document, an "Employee Handbook Receipt and Agreement" form was also provided to the employees. *Id*. at 1103. The plaintiff signed the "acknowledgment" form, but he did not sign the "Employee Handbook Receipt and Agreement" form. *Id*. Accordingly, the New Jersey Supreme Court held that signing the acknowledgment form was insufficient to indicate assent to the arbitration agreement and "absent plaintiff's signature [on the agreement form] we cannot enforce the waiver provision unless we find some other unmistakable indication that the employee affirmatively had agreed to arbitrate his claims." *Id.* at 1104. In *Leodori*, unlike the present case, the employer clearly contemplated the employee's signature on the acknowledgement form as the unmistakable indication of assent it sought to secure. However, in this case, PrimeLending did not require Plaintiff to sign a separate and distinct document in order to agree to be bound by the Arbitration Agreement nor is any such signed writing required by state law. Indeed, under New Jersey law, whether an agreement lacks a signature is not dispositive in evaluating whether a party agreed to be bound; rather, "there need only be some unmistakable indication of assent." *Id.* at 1107; *see also Argun v. Neiman Marcus Grp., Inc.*, No. 19-14548, 2020 WL 1272247, at *9 (D.N.J. Mar. 16, 2020) (recognizing that "an actual, handwritten signature is not necessary" and "a party may manifest assent to an [arbitration agreement] by clicking a link on a website."); *Hubbard v. Comcast Corp.*, No. 18-16090, 2020 WL 4188127, at *6 (D.N.J. July 21, 2020) (finding that plaintiff had agreed to arbitration provision where agreement was included in employee handbook and plaintiff submitted an electronic acknowledge form which provided "I acknowledge that I have read and I understand the Code of

10

Conduct and the Employee Handbook . . . . I understand that the Comcast Solutions Program is a mutually-binding contract between me and Comcast.").

Similarly, here, Plaintiff provided her assent when she "acknowledged" the arbitration agreement as part of the policies course. While the words "I agree" are absent from the training module, by indicating that she read the document and understood the terms of the Agreement, Plaintiff confirmed her understanding that disputes subject to the Agreement would be submitted to arbitration. As such, it would strain reason to hold that Plaintiff, despite acknowledging that she read the document and understood the terms of the Agreement, did not intend to be bound by them. *See* Becker Cert., Exhibit B ("this Dispute Resolution and Arbitration Agreement requires that disputes that involve the matters subject to the agreement be submitted to arbitration pursuant to the Dispute Resolution and Arbitration Agreement rather than to a judge and jury in court[.]") Accordingly, I find that Plaintiff assented to the arbitration agreement.

### A. The Agreement Contains a Valid and Sufficient Waiver of Rights Provision

For an arbitration agreement to be enforceable, it must adequately notify the party being bound of the rights he or she is waiving. As such, the court must look to whether the parties were "fairly informed of the contract's terms before entering into the agreement." *Hoffman v. Supplements Togo Mgmt., LLC*, 18 A.3d 210, 216 (N.J. App. Div. 2011). For a waiver of rights to be valid, the rights that the party is agreeing to waive must be "clearly and unmistakably established." *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, P.A., 773 A.2d 665, 670 (N.J. 2001) (quoting *Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.*, 393 A.2d 267, 276 (N.J. 1978)). That is, "in respect of specific contractual language, '[a] clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their

11

time-honored right to sue.'" *Garfinkel*, 773 A.2d at 670 (quoting *Marchak v. Claridge Commons*, 633 A.2d 531, 536 (N.J. 1993)). "This is the 'reasonable notice' standard and it 'is a question of law for the court to determine.'" *Id*. (quoting *Caspi v. Microsoft Network*, 732 A.2d 528, 533 (N.J. App. Div. 1999)). Put differently, an arbitration clause, "at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 315 (N.J. 2014)).

Plaintiff argues that the waiver of rights provision is insufficient because "the contract failed to inform the Plaintiff there was a distinction between resolving a dispute in arbitration and in court" and "that the plaintiff chose arbitration rather than court." Pl. Br. In Opp., at 10. Plaintiff further argues that the Agreement should not be enforced because the it was not sufficiently set apart by typeface and "was obscured in the context of the employment agreement, and because the language was not sufficiently [clear]." *Id*. In response, Defendants contend that the Agreement did in fact contain a clear waiver of rights provision that "at least in some general and sufficiently broad way, [] explain[s] that plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Def. Reply, at 4.

Plaintiff's arguments that the Agreement was insufficiently clear, not reasonably set apart by typeface, or was otherwise obscured are without merit. A cursory review of the document shows plainly that the Agreement's arbitration provisions, "at least in some general and sufficiently broad way," inform Plaintiff of the rights she is waiving. *Atalese*, 99 A.3d at 315. The Agreement slide layer explicitly provides in bold, capitalized type face that Covered Disputes are required to be submitted to arbitration "rather than to a judge and jury in court." *See* Becker Cert, Ex. B, "Dispute Resolution & Arbitration Agreement (Slide Layer)." It provides in bold font, in all capital letters, that arbitration shall be Plaintiff's only remedy and that she was giving up her

12

right to a trial by judge or jury. *See Skuse*, 2020 WL 476077 at *12 (finding that arbitration clause was clear and unambiguous because it "provided that the claims affected would be resolved by arbitration, not 'by a court or jury,' and -- in capital letters -- that the parties 'forever waive and give up the right to have a judge or a jury decide any covered claims.'" ); *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 883-84 (N.J. 2002) (upholding an arbitration clause that stated and explained the plaintiff was waiving her "right to a jury trial" and that "all disputes relating to [her] employment ... shall be decided by an arbitrator"); *Kozur v. F/V Atl. Bounty, LLC*, No. 18-08750, 2020 WL 5627019, at *5 (D.N.J. Aug. 18, 2020) (finding that arbitration clause was clear and unambiguous where it provided "in bold font, in all capital letters, that arbitration shall be Plaintiff's only remedy and that he was giving up his right to a trial by judge or jury"). As such, I find that the waiver clause was sufficiently clear to put Plaintiff on notice of the rights she was waiving.

### B. The Arbitration Agreement is Not Unconscionable

Finally, Plaintiff argues that the Agreement should not be enforced because it is unconscionable and it is a contract of adhesion. Pl. Br. at 7. Plaintiff reasons that she "had no ability to bargain" since she only had the choice of either acknowledging receipt and reading the disclaimer as part of her employment or refusing the needed job and seeking another job without the right to unemployment benefits. *Id*. Moreover, Plaintiff contends that the Agreement is also unconscionable because it eliminates her statutory remedies, such as the recovery of punitive damages, under NJLAD, and violates public policy. *Id*.

"Virtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee."

13

*Martindale*, 800 A.2d at 883  Furthermore, courts "have consistently determined that the economic coercion of obtaining or keeping a job, without more, is insufficient to overcome an agreement to arbitrate statutory claims." *Quigley v. KPMG Peat Marwick, LLP*, 749 A.2d 405, 412 (N.J. App. Div. 2000).  In that regard, a disparity in the relative bargaining positions of the parties alone is insufficient to render an agreement unenforceable on the basis of unconscionability.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 43 (1991).  Moreover, even if an arbitration agreement were determined to constitute a contract of adhesion, this fact alone would not preclude its enforcement; rather, this "is the beginning, not the end, of the inquiry." *Martindale*, 800 A.2d at 88 (quoting *Rudbart*, 605 A.2d at 686).

In New Jersey, a contract is enforceable "unless there are indicia of both procedural and substantive unconscionability." *Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 674 (D.N.J. 2017). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).  Whereas, "substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent."  *Id*.  In evaluating whether an arbitration agreement should be held unenforceable due to unconscionability, courts look not only to the "take-it-or-leave-it nature or the standardized form of the document but also to [(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the "adhering" party, and [(4)] the public interests affected by the contract." *Delta Funding Corp. v. Harris*, 912 A.2d 104,112 (N.J. 2006) (quoting *Rudbart,* 605 A.2d at 686 ). With these factors in mind, however, "[t]he New Jersey Supreme Court […] has recognized that unless the terms of an arbitration agreement are oppressive or unconscionable, the public interests

14

weigh in favor of enforcement." *Fields v. Morgan Tire & Auto., Inc.*, No. 07-2715, 2008 U.S. Dist. LEXIS 21788, at *10 (D.N.J. Mar. 18, 2008).

As an initial matter, despite Plaintiff's arguments to the contrary, it does not appear that the Arbitration Agreement eliminates Plaintiff's ability to seek punitive damages or attorney's fees. *See generally* Becker Cert., Ex A. In fact, the Agreement specifically provides that "[t]he arbitrator shall apply the substantive law relating to all claims and defenses to be arbitrated, including the award of any remedy or relief on an individual basis, the same as if the matter had been heard in court." *Id*. Thus, Plaintiff retains the right to seek, during the arbitration, any statutory remedies to which she would have been entitled in court.

I am not convinced by Plaintiff's remaining arguments regarding unconscionability. Although Plaintiff was presented with the Agreement on what might have effectively been a take-it-or-leave-it basis, the terms of the Agreement are not unduly oppressive, and fall short of substantive unconscionability. In fact, the Agreement imposes arbitration requirements on both parties, and, in doing so, simply provides that an alternative method of adjudication is required for a party seeking to bring a covered dispute against the other.

Likewise, the Agreement is not procedurally unconscionable simply because of Plaintiff's economic interests in retaining her job. As the Court noted in *Quigley*, "the economic coercion of obtaining or keeping a job, without more, is insufficient to overcome an agreement to arbitrate." 749 A.2d at 412. Here, although Plaintiff's assent may have been motivated, at least in part, by her desire or need to maintain employment at PrimeLending, that fact alone is simply not enough to render the Agreement unenforceable. Further, although there is a marked disparity between the parties' relative bargaining positions here, as the Supreme Court held in *Gilmer*, that is not sufficient to render an arbitration agreement unenforceable.

With respect to the public interest, Plaintiff contends that the Agreement should be voided as its enforcement would be tantamount to abetting discrimination.  I disagree.  The FAA was enacted to give arbitration agreements equal standing with other types of contracts.  As the Supreme Court noted in *Gilmer*, "those provisions [of the FAA] 'manifest a liberal policy favoring arbitration agreements.'"  *Gilmer*, 500 U.S. at 24.  To that end, the public policy considerations which this Court finds most important in this context are those emanating from the FAA.  In that regard, both Congress and the State of New Jersey similarly favor the enforcement of arbitration agreements, and this Court is mindful of this policy consideration in evaluating Defendants' motion to compel arbitration.  *See Skuse*, No. 082509, 2020 WL 476077, at *10 (recognizing "The FAA and the NJAA "enunciate federal and state policies favoring arbitration." ); *Martindale*, 800 A.2d at 880 (recognizing "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism for resolving disputes"); *Alamo Rent A Car, Inc. v. Galarza*, 703 A.2d 961, 963 (N.J. App. Div. 1997) (recognizing "strong public policy in our state favoring arbitration as a means of dispute resolution and requiring a liberal construction of contracts in favor of arbitration").  As such, Plaintiff's public policy argument is not persuasive.

Accordingly, Defendants' motion to compel arbitration is granted.

## IV.     CONCLUSION

For the forgoing reasons, Defendants' motion to compel arbitration is **GRANTED** and this action is hereby dismissed.

Dated: October 9, 2020                                       s/ Freda L. Wolfson
                                                             Hon. Freda L. Wolfson
                                                             U.S. Chief District Judge